UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA   )
                           )
     v.                    )    CRIMINAL NO. 04-10108-MEL
                           )
TREVIS CATRON              )


MOTION FOR ATTORNEY-CONDUCTED
VOIR DIRE OF PROSPECTIVE JURORS

The defendant Trevis Catron respectfully moves this court to allow counsel to conduct the voir dire of prospective jurors prior to the empanelment of a jury in this case. The defendant makes this motion pursuant to Fed. R. Crim. P. 24(a)(1).[1] Counsel submits that attorney-conducted voir dire using open-ended questions pertaining to relevant issues in the case will encourage more candid responses from the veniremen than would questioning from the bench directly. Alternatively, counsel requests a hybrid voir dire where questions are posed to the panel by the court, followed by questions from counsel.

Trevis Catron is charged with being a felon in possession of a firearm, in violation 18 U.S.C. §922(g)(1). The setting for the events is Wayne Street in Dorchester. There may be evidence that this is an area of frequent gunplay. The primary witnesses against Catron will be police officers. Mr. Catron is black and the police witnesses against him are white. The defense will

---

[1] This motion envisions attorney-conducted voir dire by government counsel as well.

necessarily be challenging the accuracy and reliability of the police testimony.  At least some potential jurors are likely to view the evidence through certain predispositions relating to race, urban life, the incidence of violence in urban communities, and the role of police officers in regulating street life in these communities.  There is a likelihood that the evidence in this case is likely to provoke a resort on the part of some jurors to racial and cultural stereotypes when they evaluate the testimony.

Given the potential for jurors to hold deeply rooted opinions, biases, and prejudices when asked to judge the subject matter of this trial, defense counsel submits that questions during jury selection must allow jurors the chance to ventilate their opinions and feelings to the fullest extent possible.

Counsel is not asking for permission to conduct individual voir dire of prospective jurors.  Instead, counsel requests that she be allowed to question the panel as a group for forty (40) minutes in order to explore their opinions and feelings by asking open-ended questions that might call for narrative responses from prospective jurors.  Direct questioning by counsel on voir dire is often used in courts of the various States and the District of Columbia.[2]  In addition, some United States District Courts allow

---

[2] Counsel is speaking from her personal experience. Counsel has tried jury cases in the state of Florida and the District of Columbia; both jurisdictions use attorney-conducted voir dire to the panel of prospective jurors.  Counsel has

attorneys to conduct voir dire by open questions to the panel. See Voir Dire Instructions by the Hon. Donald E. O'Brien of the Northern District of Iowa, allowing attorneys 45 minutes of voir dire, attached.[3] Trial judges sitting in the U.S. District Court for the Southern District of Ohio all allow attorney-conducted voir dire of the venire after initial questioning by the district judge. See District Judge Trial Procedures at www.ohsd.uscourts.gov.

Counsel is asking to use a method of questioning taught at the Trial Lawyers College. The Trial Lawyers College is a 3-week long trial skills seminar.[4] A large part of the seminar is devoted to voir dire examination. The utility of asking open-ended questions on voir dire is founded on the premise that jurors decide cases by consulting their feelings as well as their intellect. For attorneys to select jurors who are capable of judging a case fairly, attorneys must have a way to explore jurors' feelings about the issues in a case. In a case such as this, it is easy to imagine that the panel will contain persons who cannot put aside their biases and prejudices regarding allegations of potentially violent conduct by a member of a

---

anecdotal knowledge that attorney conducted voir dire is common throughout the southern and western states.

[3] This document may be found at the website for the U.S. Court for the Northern District of Iowa at www.iand.uscourts.gov.

[4] Counsel attended the seminar in July, 2004.

minority group in order to judge the evidence fairly.

Counsel wishes to explore jurors' feelings about city life and the extent to which that contrasts with their lives, to explore their racial attitudes, their attitudes about the police officers and the burdens they work under and the exigencies in which they operate.

In the event the Court wishes to use a hybrid method of voir dire, counsel would propose that the venire be questioned by the court along the following lines, followed by questioning from counsel:

1. During the past 10 years, have any of you served on a jury or been excluded from a jury?  Was the case civil or criminal?  Without saying the outcome, did the jury reach a verdict?  Will you be able to put aside your prior jury experience as you sit in this case, ignore completely anything you learned about the law, and decide this case solely on the basis of the evidence that I admit during this trial and on the law as I instruct you in it?

2. Have you, or has anyone in your immediate family, been a party to any lawsuit, whether civil or criminal?  Is so, who ( you or a family member) was the party to the case?  Was the person a plaintiff or a defendant?  What was the nature of the case?  Was it tried or settled? What was the outcome? Is there anything about that experience that causes you to

be unsure about your ability to decide this case fairly and impartially, and only on the basis of the evidence I admit during this trial and the law as I instruct you in it?

3. Have any of you ever been a witness in state or federal court in any lawsuit, whether civil or criminal?  For which side did you testify?  What was the nature of the case?  Is there anything about that experience that causes you to be unsure about your ability to decide this case fairly and impartially, and only on the basis of the evidence I admit during this trial and the law as I instruct you in it?

4. Have you, or has any member of your family, attended law school or had other training in the law?  If so, can you put aside whatever knowledge of the law you may have acquired before today, and will you promise to apply only those legal principles in which I instruct you to the evidence in this case?

5. Have any of you ever worked for any local, state, or federal law enforcement agency, including the U.S. Postal Inspection Service?  If so, which agency?  When?  Where?  What was your position?  Have any of you ever had any particular experience with the Boston Police Department which may affect your ability to be fair and impartial in this case?

6. Have any of you, or has anyone close to you, ever been arrested or charged with a crime?  If so, who was arrested

      or charged?  Were you, or the person involved, prosecuted in a court of law?  Was the case tried or settled?  What was the outcome?  How do you feel you, or the person involved, were treated, either by the police or anyone you or they dealt with afterwards?

7. Have you or has a close friend or family member ever made a complaint against a law enforcement officer or a police department?  If so, what was the nature of the complaint?  Was there anything about that experience that causes you to be unsure about your ability to decide this case fairly and impartially, and only on the basis of the evidence I admit during this trial and the law as I instruct you in it?

8. It is your duty as a juror to listen to the opinions and points of view of other members of the jury.  By the same token, it is also your duty as a juror to express your opinion or point of view regarding the evidence to other members of the jury.  Is there anyone here who would feel any reluctance in joining the discussion with the other members of the jury during deliberations?  Is there anyone here who might feel offended if other members of the jury disagreed with his or her view of the evidence?  Is there anyone here who might feel unable to listen to a fellow juror who disagreed with you?

9. Is there anything about the nature of the charge in this

    case which makes you uncertain about your ability to presume the defendant is innocent and be fair to both sides in this trial?

Counsel anticipates that other follow-up questions might be asked, depending upon the responses given by panel members.

                              Respectfully submitted

                              By his attorney,

                              /s/ Syrie D. Fried
                              Syrie D. Fried
                                 B.B.O. #555815
                              Federal Defender Office
                              408 Atlantic Avenue, 3rd Floor
                              Boston, MA  02110
                              Tel: 617-223-8061

<u>Attachment</u>

**JUDGE O'BRIEN'S VOIR DIRE INSTRUCTIONS**

The following are Judge O'Brien's jury selection procedures.

1.  Approximately 25 randomly-selected potential jurors will be notified to appear at the courthouse at 8:30 a.m. on the first day of trial. About a week before trial, the attorneys will receive from the Clerk of Court a list of the potential jurors, together with copies of their juror questionnaires. The attorneys also will receive a list of the first 14 potential jurors in the order in which they were randomly drawn. The court will be provided with a separate list of all of the potential jurors in the order in which they were randomly drawn.

2.  The first 14 preselected potential jurors will be seated in order in the jury box, and will be the potential jurors first considered for impanelment on the jury.

3.  At 9:00 a.m., the Clerk of Court will open court.

4.  Judge O'Brien will greet the jury, counsel, and the parties; announce the name of the case to be tried; and ask counsel if they are ready to proceed.

5.  The Clerk of Court will swear in the entire jury panel.

6.  Judge O'Brien will ask the entire jury panel and ask potential jurors to raise their hands if their answer is in the affirmative. The attorneys are expected to note who raises their hands and follow up, if they choose, when it is their turn to examine the panel.

7.  Judge O'Brien will ask jurors if they are aware of any circumstance that might prevent their service on the jury, and may excuse anyone for whom he believes jury service would be an undue burden. The members of the jury panel not already called will be directed to pay attention to the proceedings in the event they are called to replace a potential juror excused for cause. The lawyers should **REFRAIN** from that sort of inquiry unless the subject is brought up by a juror.

8.  Judge O'Brien will make some brief opening remarks, and will read a statement of the case.

9.  Judge O'Brien will introduce the courtroom staff. He then will ask the

attorneys for each party to identify themselves, the members of their firm and their clients.  The judge will then ask whether any of the potential jurors has had any contact with or has knowledge of any of those persons.

10. Judge O'Brien will call on counsel for each party to read a list of anticipated witnesses and give a short description of each one.  For example, "*John Smith is an accountant, he is about 34 years of age, and he lives in Sioux City.*"  Judge O'Brien then will ask whether any of the potential jurors has had any contact with or has knowledge of any of the witnesses.

11. Judge O'Brien will ask the individual potential jurors to introduce themselves, state where they are from, state where they work, and describe their families.  Among other things, Judge O'Brien will inquire into the following:

      a.      Knowledge of this case or any similar case;
      b.      Past jury experience;
      c.      Participation in any lawsuits, whether as a plaintiff or a defendant;
      d.      Experience in matters specifically related to the issues in the case.  For example, in a fire accident case: "*Are you a member of a volunteer fire department?*";
      e.      Possible bias and prejudice; and
      f.      Any other matters Judge O'Brien deems pertinent at the moment.

12. After Judge O'Brien has completed his questions, each side will be permitted to conduct up to 45 minutes of jury voir dire, although much less time usually is sufficient.  A request for additional time for attorney voir dire because of the complexity or unusual nature of a case, or in multi-party cases, should be made at the final pretrial conference.  **THE ATTORNEYS SHOULD REFRAIN FROM ENGAGING IN CONVERSATIONAL QUESTIONING OF INDIVIDUAL POTENTIAL JURORS CONCERNING INFORMATION THAT IS ALREADY KNOWN.**  Attorneys are allowed to question the panel to follow up on the judge's questions and to raise a few additional questions intended to help with the jury selection process, but will not be permitted to pin down potential jurors regarding how they would vote under a certain set of circumstances.

13. The parties will be permitted to challenge any potential juror for cause.  These challenges may be made at the side-bar.  If a potential juror is excused for cause, he or she will be replaced by the next potential juror on the jury list, who then will undergo

the same questioning as the other potential jurors.  There will be 14 potential jurors remaining in the jury box at the conclusion of voir dire.

      14.     The Clerk of Court will give counsel for the plaintiff(s) a list of the names of the potential jurors.  Counsel for the plaintiff(s) is to draw a line through one of the names, note in the margin, "*Plaintiff's first peremptory challenge*," and then state aloud, "*Exercised.*"  The Clerk of Court then will take the list and hand it to counsel for the defendant(s), who is to draw a line through one of the names, note in the margin, "*Defendant's first peremptory challenge,*" and then announce aloud, "*Exercised.*"  This procedure will be repeated until each side has exercised 3 peremptory challenges and eight jurors remain in the jury box.  While technically these are "challenges," the court will describe them as "strikes" to protect the feelings of the challenged jurors.

      15.     The names of the eight remaining jurors will be announced by the Clerk of Court.  Those persons will be placed in the jury box and will constitute the jury in the case.  The rest of the panel will be excused.

      16.     The Clerk of Court will swear in the jury.

      16.     **THERE ARE NO ALTERNATE JURORS.  ANY VERDICT MUST BE UNANIMOUS.**  During trial, if any of the eight jurors has to be excused from jury service for any reason, the case can be decided by as few as 6 jurors.

      17.     Upon stipulation of the parties, if the court approves, the verdict can be less than unanimous or decided by fewer than six jurors, or both.

      18.     Upon the request of any party, Judge O'Brien will consider modifying jury selection procedures in a particular case.  Such modifications may include, but are not limited to, a twelve-person jury or an increase in the number of peremptory challenges.